RENDERED: JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1477-ME

D.M.S.                                                                                         APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE TRACI BRISLIN, JUDGE
ACTION NO. 24-AD-00014

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; M.R.R., A
MINOR; AND R.J.R.                                                                   APPELLEES

OPINION AND ORDER
AFFIRMING

** ** ** ** **

BEFORE: COMBS, ECKERLE, AND L. JONES, JUDGES.

JONES, L., JUDGE: Appellant, D.M.S. (Mother), appeals the Fayette Circuit

Court's October 4, 2024, Findings of Fact, Conclusions of Law, and Judgment

terminating her parental rights (TPR) to her minor child, Appellee, M.R.R.

(Child).[1]  We have carefully reviewed the briefs filed, the entirety of the record on appeal, and the relevant law.  In doing so, we affirm the decision of the Fayette Circuit Court for the following reasons.

## BACKGROUND

In early 2022, Appellee, the Cabinet for Health and Family Services (Cabinet) filed a dependency, neglect, and abuse (DNA) petition regarding Child, who was a little over one year old at the time, after Mother took Child to the hospital and medical professionals discovered that he had sustained multiple fractures to his legs, which were determined to be the result of neglect or abuse. The exact nature of how Child sustained the injuries was contested during the DNA case and TPR case; however, Mother ultimately disclosed that she had lied about who was watching Child at the time he would have sustained the injuries, at one point saying it was a babysitter before claiming that it was Father.

Mother stipulated to neglect in the DNA case and admitted to not noticing Child's injuries for several days while being under the influence of marijuana at the time.  Mother was also arrested and pled guilty to driving under the influence shortly after the DNA case commenced.  The circuit court initially placed Child with a relative of Mother's, but Child eventually came into the

---

[1] Appellee, R.J.R. (Father), has not appealed this decision nor has he been involved in any capacity in this appeal or the underlying cases.

Cabinet's custody in June 2022. The Cabinet provided Mother with a case plan, which included completing a substance abuse assessment and following its recommendations, obtaining and maintaining stable housing, consistently screening negative for drugs, and completing a parenting assessment through Feinberg and Associates and following its recommendations.

Mother engaged with Feinberg and Associates and a report (the Feinberg Report) was completed in June 2023. The Feinberg Report recommended that Mother establish independent and appropriate housing; participate in dialectical behavior therapy (DBT); participate with Child in parent-child interaction therapy (PCIT); and continue to randomly drug screen. It also stated if Mother could comply with the recommendations within six months, that reunification should occur. Mother relapsed shortly after the Feinberg Report was issued. In October 2023, Mother voluntarily enrolled in an intensive outpatient program (IOP) and sober living program. The circuit court changed the Child's permanency goal to adoption in the DNA case in November 2023 and the Cabinet filed a TPR petition in January 2024. Mother completed her IOP in March 2024 and immediately moved into another sober living facility. She began DBT in June 2024. The TPR hearing occurred in September 2024.

During the TPR hearing, Dr. Cravero, a psychologist employed with Feinberg and Associates, testified about the Feinberg Report. While she

acknowledged Mother's subsequent success in achieving and maintaining sobriety since October 2023, she explained that sobriety was not the only issue with Mother's capacity to parent, and expressed concern that Mother did not make significant progress towards the rest of the recommendations within six months from June 2023. Additionally, Dr. Cravero testified that she had continuing concerns with Mother's not having maintained stable housing, noting her opinion that sober living was not indicative of an individual's ability to live independently and maintain sobriety outside of a structured environment. She also voiced apprehension with Mother's beginning a romantic relationship with a man she met while they were both in recovery, especially considering how she previously explained to Mother that beginning a relationship during the process may hinder her recovery.

The family's ongoing Cabinet worker testified next. She commended Mother for the progress she made on her sobriety but reiterated the same continuing concerns as Dr. Cravero. She also stated that the Cabinet still had its doubts considering the origin of Child's injuries. The Cabinet worker further testified that Child had significant developmental delays at the beginning of the DNA case, but that he had made great strides in speech therapy and physical therapy while in the care of his current foster family. The foster family, which was a preadoptive placement, had bonded significantly with Child.

Mother testified about the progress she had made on achieving and maintaining sobriety and her success with employment. Regarding her paramour, Mother admitted that she did not inquire into his background or history and was unaware of some pending assault charges he accrued. She maintained that she did not abuse Child or know how he had sustained his injuries, just that she had erred in entrusting Child to Father's care for a time and neglecting to take Child to receive treatment for the injuries for several days. She also testified that she waited a year to begin DBT because of scheduling concerns with her first IOP and that she was unable to begin PCIT because of the delay in starting DBT and the Cabinet's decision to change Child's goal to adoption.

The circuit court issued written orders terminating Mother's parental rights on October 4, 2024. Mother filed a motion to vacate under Kentucky Civil Rules of Procedure (CR) 52.02 and CR 59.[2] The circuit court denied that motion and this appealed followed.

## STANDARD OF REVIEW

A judgment involuntarily terminating a parent's rights to a minor child shall only be reversed if it is clearly erroneous, or, in other words, if there is no substantial, clear, and convincing evidence to support the decision. *Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010). Substantial

---

[2] We will elaborate on the basis of this motion in our analysis below.

evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). Furthermore, "[a]s to what constitutes the best interest of the child, any factual findings are reviewed under the clearly erroneous standard; any decisions based upon said facts are reviewed under an abuse of discretion standard." *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009) (citations omitted). Unlike "[c]lear error [which] applies to a review of a trial court's findings of fact; abuse of discretion applies in other situations where, for example, a 'court is empowered to make a decision—of its choosing—that falls within a range of permissible decisions.'" *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004).

### ANALYSIS

As a preliminary matter, we note that Mother filed a motion to strike the brief filed by Child's Guardian *ad litem* (GAL) for failing to conform to the requirements of Kentucky Rules of Appellate Procedure (RAP) 32(B).[3] In this instance, we shall not impose any of the penalties afforded by RAP 31(H); however, we remind all counsel involved in this appeal of the importance of complying with the RAPs, especially in cases involving issues affecting the

---

[3] On April 8, 2025, the Court issued an Order passing this motion to the panel assigned to determine the merits of the appeal.

welfare of children.[4] *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Accordingly, the Court ORDERS that Mother's motion to strike the brief filed by Child's GAL be, and hereby is, DENIED. We now turn to the merits.

There are three necessary determinations a circuit court must make before a parent's rights may be involuntarily terminated: (1) the child is found to be "[a]bused or neglected[,]" as defined by Kentucky Revised Statutes (KRS) 600.020(1); (2) the termination must be in the child's best interest; and, (3) at least one ground of parental unfitness as set out in KRS 625.090(2) exists. KRS 625.090; *see also Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014).

It is uncontroverted that Child was abused or neglected; Mother stipulated to such during the underlying DNA action and at the final TPR hearing. Mother also does not contest the Court's findings regarding KRS 625.090(2).[5]

---

[4] Specifically, we note that both Mother and the GAL failed to adhere to RAP 31(B) and included the full names of the parties involved in their briefs instead of using initials or descriptive terms.

[5] Specifically, the circuit court found that Child had been in the Cabinet's custody since June 2022. KRS 625.090(2) provides:

> No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:
>
> . . .
>
> > (j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months

Instead, Mother takes issue with the findings surrounding Child's best interests. Her primary argument is that the circuit court erred in relying too heavily on the Feinberg Report, which she claims was outdated, rather than focusing on the progress she had made since the report in the year preceding the TPR hearing. We are unpersuaded for the following reasons.

Firstly, Mother raises the argument that the Feinberg Report was outdated for the first time on appeal. "Almost all issues are subject to waiver, whether from inaction or consent, . . . and [a] new theory of error cannot be raised for the first time on appeal." *Commonwealth v. Steadman*, 411 S.W.3d 717, 724 (Ky. 2013) (internal quotation marks omitted). During the hearing, Mother did not object to the introduction of the Feinberg Report as an exhibit or to Dr. Cravero's testimony about the report. To the extent Mother did challenge Dr. Cravero's testimony in her motion to vacate, she argued that Dr. Cravero's statements about Mother's current situation were merely speculative; there is no mention of the Feinberg Report.

Furthermore, even if we were to accept Mother's argument that the Feinberg Report was outdated, Mother does not acknowledge other factors, beyond her noncompliance with the Feinberg Report, that the circuit court took into

out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]

consideration in making its decision. Additionally, the circuit court considered Mother's failure to obtain stable and independent housing; her long history of substance abuse; her history of being in toxic relationships and the issues concerning her current paramour; and her failure to provide care and support to Child. *See* KRS 625.090(3). The circuit court also found that Child was doing well in his current foster placement, and that his physical, emotional, and mental health was improving, and that child's progress was expected to continue. *Id.* In addition to the findings which weigh against Mother, the circuit court also acknowledged the tremendous progress Mother had made in achieving and maintaining her sobriety.

It is apparent from the record that the circuit court thoroughly weighed the evidence presented in making its decision. While Mother presented several pieces of evidence in her favor, "we must bear in mind that in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citations omitted). Thus, we determine that there was substantially clear and convincing evidence to support the circuit court's findings, and that the circuit court did not abuse its discretion in determining termination of Mother's parental rights would serve Child's best interests based on those findings.

# CONCLUSION

Accordingly, we affirm the October 4, 2024, Findings of Fact and Conclusions of Law, and Judgment of Fayette Circuit Court which terminated Mother's parental rights.

ALL CONCUR.

ENTERED: ____07/02/2026____     _____

HON. LISA P. JONES
JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANT:

William D. Tingley
Covington, Kentucky

BRIEF FOR APPELLEE CHILD:

Richard F. Dawahare
Lexington, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Dilissa G. Milburn
Mayfield, Kentucky